UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MILBURN SMITH RODGERS,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:19-cv-00030<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff Milburn Smith Rodgers filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Social Security Administration (SSA) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. (Doc. No. 1.) Before the Court is Rodgers's motion for judgment on the administrative record requesting reversal of the administrative law judge's decision. (Doc. No. 17.) The Commissioner responded in opposition. (Doc. No. 21), and Rodgers filed a reply (Doc. No. 22). Having considered the parties' filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Rodgers's motion be granted in part, that the final decision be reversed, and that this case be remanded for further administrative proceedings consistent with this opinion.

### I. Background

#### A. Rodgers's DIB Application

Rodgers applied for DIB on August 24, 2016 (AR 151–53[1]), alleging that he has been disabled since December 1, 2015, by chronic obstructive pulmonary disease (COPD), severe back injury, back pain, and problems with his neck and arm (AR 178). The Commissioner denied Rodgers's application initially and on reconsideration. (AR 73, 88.) Rodgers requested a hearing before an administrative law judge (ALJ) (AR 103–05), which was held on April 10, 2018 (AR 30). The ALJ heard testimony from Rodgers, who was represented by counsel, and a vocational expert. (AR 32–60.)

On July 10, 2018, the ALJ issued a written decision finding that Rodgers had not been disabled from his alleged onset date through December 31, 2016. (AR 15–25.) In reaching that conclusion, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2015 through his date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic obstructive pulmonary disease (COPD); and degenerative disc disease (DDD) (20 CFR 404.1520(c)).

\*   \*   \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[1] The Transcript of the Administrative Record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit for a total of eight hours for each activity; must change position for one minute every 30 minutes while sitting; and could perform no more than one hour of continuous standing or walking.

\* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on March 12, 1963 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

(AR 17–24.) The Social Security Appeals Council denied Rodgers's request for review on February 26, 2019 (AR 1–5), making the ALJ's decision the final decision of the Commissioner.

### B. Appeal Under 42 U.S.C. § 405(g)

Rodgers filed this civil action for review of the ALJ's decision on April 23, 2019 (Doc. No. 1), and the Court has jurisdiction under 42 U.S.C. § 405(g).[2] Rodgers argues that ALJ erred by finding that he was not disabled under Listing 3.02(A), which governs chronic respiratory disorders, and by failing to give controlling weight to the opinion of his treating physician, Dr. David Ours. (Doc. Nos. 17-1, 22.) Rodgers requests reversal of the ALJ's decision and an award of benefits, or, alternatively, remand. (Doc. No. 17-1.) The Commissioner responds that substantial evidence supports the ALJ's analysis of Listing 3.02(A) and Dr. Ours's opinion. (Doc. No. 22.)

### C. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

---

[2] Section 405(g) requires a claimant seeking judicial review of the Commissioner's final decision to file a civil action "within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow." 42 U.S.C. § 405(g). Section 405(g)'s implementing regulation clarifies that the date of mailing is the date that the Appeals Council's notice of final decision is received by the claimant, which is "presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c). Accordingly, in most cases, a claimant must file a civil action challenging the final decision of the Commissioner within 65 days of the date on the Appeals Council's notice of final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007) (holding that the 65-day period is calculated "from the date on the notice itself"). Here, the Appeals Council's notice of final decision is dated February 26, 2019, and Rodgers timely filed this action on April 23, 2019, 56 days later.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

Rodgers applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Rodgers must establish that he had a disability on or before the last date he was eligible for insurance under Title II, which is determined based on his earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1);

20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted by* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite his limitations.'" *Combs*, 459 F.3d at 643 (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If the claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [his] residual functional capacity, age, education, and work experience," the claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

**III.     Analysis**

Rodgers argues that the ALJ erred by finding that he did not meet the requirements of Listing 3.02(A), which governs chronic respiratory disorders, and by failing to properly analyze the opinion of his treating physician, Dr. Ours. For the reasons that follow, Rodgers's arguments have merit, and the errors he identifies require remand.

**A.     Listing 3.02(A)**

The Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

7

Within each listing, the SSA specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing."). The claimant must also satisfy the "duration requirement[,]" 20 C.F.R. § 404.1525(c)(3), which, unless the SSA specifies otherwise, requires a showing that the impairment "has lasted or can be expected to last for a continuous period of at least 12 months," *id.* § 404.1525(c)(4).

COPD is evaluated under Listing 3.02 using a pulmonary function test. 20 C.F.R. § 404, subpt. P, app. 1, § 3.00(A)(1), (D)(1) (2018). Spirometry—the test relevant to this appeal— "measures how well you move air into and out of your lungs[ ] and involves at least three forced expiratory maneuvers during the same test session." *Id.* § 404, subpt. P, app. 1, § 3.00(E)(1). "A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time." *Id.* The volume of air exhaled "in the first second of the forced expiratory maneuver is the $FEV_1$." *Id.* When a claimant's $FEV_1$ is less than 70 percent of the predicted normal value, the Commissioner "require[s] repeat spirometry after inhalation of a bronchodilator . . . unless it is medically contraindicated." *Id.* § 404, subpt. P, app. 1, § 3.00(E)(2)(b). Typically, the claimant's highest post-bronchodilator $FEV_1$ value is used to analyze Listing 3.02(A). *Id.* § 404, subpt. P, app. 1, § 3.00(E)(1), (E)(2)(b); *see also Joshua v. Comm'r of Soc. Sec.*, No. 08-14012, 2009 WL 1107681, at *7 (E.D. Mich. Apr. 23, 2009) ("In the usual case, it is the post-bronchodilator values which are used.") (citation omitted).

For an $FEV_1$ value to be valid, the underlying "forced expiratory maneuvers must be satisfactory[,]" meaning that the claimant "exhale[s] with maximum effort following a full inspiration[ ]" and "the test tracing has a sharp takeoff and rapid rise to peak flow, . . . a smooth contour, and either lasts for at least 6 seconds or maintains a plateau for at least 1 second." 20

C.F.R. § 404, subpt. P, app. 1, § 3.00(E)(2)(c). The claimant must also "be medically stable at the time of the test." *Id.* § 404, subpt. P, app. 1, § 3.00(E)(2)(a). A claimant is not medically stable when, among other things, he is "[e]xperiencing, or within 30 days of completion of treatment for, an acute exacerbation (temporary worsening) of a chronic respiratory disorder[,]" although "[w]heezing by itself does not indicate" medical instability. *Id.* § 404, subpt. P, app. 1, § 3.00(E)(2)(a)(iii).

To be found disabled under Listing 3.02(A), a claimant must receive a valid $FEV_1$ value that is less than or equal to a threshold determined by the claimant's gender, age, and height without shoes. *Id.* § 404, subpt. P, app. 1, § 3.02(A). Because Rodgers is 70 inches tall without shoes and over twenty years old, he must receive an $FEV_1$ of less than or equal to 1.75 to be found disabled under Listing 3.02(A).[3] *Id.*

Two pulmonary function tests are relevant to this appeal. On December 21, 2010, Dr. Douglas Kane tested Rodgers's lung capacity, recording an $FEV_1$ of 1.25 prior to administration of a bronchodilator and a value of 1.43 after. (AR 371–72.) Rodgers underwent another pulmonary function test on October 14, 2016, after consulting physician Dr. Terrence Leveck examined him. (AR 299–311.) In his examination report, Dr. Leveck noted that, according to a medical assistant, Rodgers "gave good effort with [the] pulmonary function testing . . . , but [Rodgers] tended to have coughing spells during the testing which may have affected the result." (AR 299.) At the time Dr. Leveck documented his examination findings, Rodgers's pulmonary function test results were still "pending." (AR 301.) Ultimately, the test produced $FEV_1$ values of

---

[3] Rodgers argues that the relevant value is 1.55, but that is the $FEV_1$ for *women* of 70 inches who are over twenty years old. 20 C.F.R. § 404, subpt. P, app. 1, § 3.02(A).

0.76, 0.79, and 1.07 before the administration of a bronchodilator and three $FEV_1$ values of 1.07 after. (AR 306–11.)

>The ALJ provided the following analysis of Rodgers's COPD at step three:
>
>With respect to [Rodgers's] alleged impairments, [Rodgers] presents neither the gravity of symptoms nor the medical documentation necessary to establish an impairment of listing level severity.
>
>The undersigned has considered [Rodgers's] chronic obstructive pulmonary disease and general lung conditions with respect to the respiratory listings, and the undersigned finds [Rodgers] does not meet any of the relevant listings. [Rodgers's] spirometry test performed on December 21, 2010, does not show that there were three reproducible results (Exhibit 9F/5). With respect to [Rodgers's] spirometry associated with the consultative examination on October 14, 2016 (Exhibit 3F), the examiner notes that, although the medical assistant felt that [Rodgers] gave good effort on the pulmonary function test, [Rodgers] tended to have coughing spells during the testing, which may have affected the results (*Id.* at 2).
>
>Given the technical shortfalls with meeting a respiratory listing due to the testing insufficiencies described above, one could argue that the record demonstrates that [Rodgers's] COPD medically *equals* a listing. The argument made by [Rodgers's] representative could be described as equaling, rather than meeting, a listing, which requires medical expert testimony. After review of the record, the undersigned does not find it necessary to enlist a medical expert to testify.
>
>[Rodgers] continues to smoke cigarettes although he testified that he has tried everything to stop and he has reduced his smoking. The Administrative Law Judge certainly acknowledges the difficulty with smoking cessation. However, continued smoking certainly weakens any argument that [Rodgers's] current condition medically equals a listing.

(AR 19–20.)

Rodgers argues that his $FEV_1$ values establish that he meets Listing 3.02(A) and that the ALJ erred in finding otherwise. (Doc. Nos. 17-1, 22.) Specifically, Rodgers argues that Dr. Leveck never concluded that Rodgers's coughing invalidated the test results and that the ALJ erred by relying on the mere possibility of such invalidation to discredit them. (Doc. No. 22.) The Commissioner responds that the December 21, 2010 test did not meet the definition of spirometry because it fell short of the three required forced expiratory maneuvers and, regardless, occurred

10
Case 2:19-cv-00030 Document 23 Filed 08/14/20 Page 10 of 19 PageID #: 462

five years prior to Rodgers's alleged onset date. (Doc. No. 21.) With respect to the October 14, 2016 test, the Commissioner does not dispute that Rodgers's $FEV_1$ scores, if valid, would be enough to meet the listing; instead, the Commissioner argues that Rodgers's coughing did affect affect the results and that there is other evidence in the record that supports the ALJ's finding that Rodgers did not meet Listing 3.02(A). (*Id.*)

In analyzing whether a claimant's conditions meet or medically equal one of the listings, an ALJ must "actually evaluate the evidence, compare it to [the relevant listing(s)], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). In determining whether the ALJ has met that burden, courts in this circuit have looked to the entirety of the ALJ's opinion and not just the step-three analysis. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding that "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (noting that "[t]he language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue[,]" and finding that ALJ's minimal step-three analysis was adequate where "[t]he ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings").

An ALJ's failure to provide an adequate step-three analysis is harmless when the claimant has not shown that his impairments met or medically equaled the severity of any listed impairment. *Forrest*, 591 F. App'x at 366. Therefore, unless the claimant "point[s] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing[,]" the ALJ does not commit reversible error by failing to properly analyze that listing. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).

Rodgers has met that burden here. The Commissioner is correct that the results of the December 21, 2010 test—which produced only two $FEV_1$ values—do not meet the SSA's definition of spirometry and are therefore insufficient to establish that Rodgers meets Listing 3.02(A). *See Nettleman v. Comm'r of Soc. Sec.*, 728 F. App'x 473, 475 (6th Cir. 2018) ("The regulations specifically require that spirometry results include at least three $FEV_1$ readings in each maneuver or test."). But Rodgers has also pointed to the October 14, 2016 test, which produced three post-bronchodilator $FEV_1$ values of 1.07. Those values are below the threshold of 1.75 set by Listing 3.02(A), and, as Rodgers emphasizes, neither Dr. Leveck nor the ALJ actually analyzed whether the results were invalid. At the time that Dr. Leveck posited that Rodgers's coughing "may have affected" the test, the results were still pending. (AR 299.) Further, the technician who completed the pulmonary function testing report indicated that Rodgers's had given maximum effort during the exam, was not suffering from any acute respiratory illness, and had not experienced "[w]heezing" or "[b]roncho spasms[.]" (AR 303.)

Given those findings, the Commissioner's conclusory claim that Rodgers's "coughing spells" rendered the exam results invalid is unavailing. (Doc. No. 21, PageID# 436.) Rodgers's post-bronchodilator results appear to meet all of the criteria of a satisfactory exam; more importantly, it is not the Court's role to make that finding in the first instance. *See Woolley v. Comm'r of Soc. Sec.*, No. 13-15175, 2014 WL 6612378, at *8 (E.D. Mich. Nov. 20, 2014) (concluding that "it certainly appear[ed] at least possible that [claimant] satisfied Listing 3.02(A)'s criteria" and remanding because "it is not the Court's role to make such factual determinations in the first instance"). The Commissioner also argues that the ALJ's step-three analysis finds support in the opinions of the consulting, non-examining physicians, who, after reviewing the October 14, 2016 exam results, concluded that Rodgers did not meet the requirements of any listing. Again, it

is the ALJ's role, not the Court's, to make that finding. *See Joshua*, 2009 WL 1107681, at *9 (dismissing Commissioner's effort to "proffer[ ] reasonable arguments and potential explanations for why the ALJ may have" rejected certain spirometry results at step three). Regardless, the Commissioner's argument is particularly unpersuasive given that the ALJ did not rely on the consulting, physicians' opinions; rather, he accorded them "little weight" because "the longitudinal medical record suggest[ed] greater limitation." (AR 22.)

To facilitate meaningful judicial review, it is the ALJ's obligation to "actually evaluate the evidence" in light of the relevant listing. *Reynolds*, 424 F. App'x at 416. Because the ALJ failed to do that here, and because Rodgers has identified evidence establishing that he could reasonably meet the requirements of Listing 3.02(A), the ALJ's error is not harmless and this case should be remanded for a proper step-three analysis.[4] *See Woolley*, 2014 WL 6612378, at *8 (remanding where the Court could not conclude "that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that [claimant did] not satisfy . . . Listing [3.02(A)]") (emphasis in original); *Joshua*, 2009 WL 1107681, at *9 (remanding where, among other things, ALJ had "failed to consider certain evidence" relevant to Listing 3.02(A) analysis).

### B. Dr. Ours's Opinion and the Treating Physician Rule

Dr. Ours, a family medicine specialist, has treated Rodgers for thirty years as his primary care physician. (AR 48, 269–97, 319–60.) On August 25, 2016, Dr. Ours completed a medical source statement of Rodgers's ability to do physical, work-related activities. (AR 270–73.) Dr. Ours opined that Rodgers can lift and/or carry twenty pounds occasionally and less than ten

---

[4] The parties also debate whether the ALJ properly concluded that Rodgers was unlikely to medically equal Listing 3.02 because he is a smoker. However, Rodgers has pointed to evidence reasonably establishing that he meets (rather than medically equals) Listing 3.02(A), and therefore the Court need not address these arguments.

pounds frequently. (AR 270.) He further opined that, in an eight-hour workday with normal breaks, Rodgers can stand or walk for less than two hours and sit less than six hours. (AR 270–71.) Dr. Ours found that Rodgers is limited in his ability to push or pull with his upper and lower extremities. (AR 271.) When asked to provide the medical and clinical findings that support those limitations, Dr. Ours wrote "arthralgias," degenerative joint disease of the cervical spine in the neck and back, and "severe emphysema[.]" (*Id.*) In the second part of the medical source statement, Dr. Ours indicated that Rodgers can occasionally climb, balance, kneel, crouch, and stoop, but never crawl, and that Rodgers is limited to occasional reaching, handling, fingering, and feeling. (AR 271–72.) Dr. Ours cited "severe arthritic pain" in support of these limitations. (AR 272.)

The ALJ analyzed Rodgers's treatment with Dr. Ours and Dr. Ours's medical source statement as follows:

> David Ours, M.D., examined [Rodgers] on August 25, 2016, and diagnosed malaise and fatigue, generalized anxiety disorder, mixed hyperlipidemia, emphysema, and degeneration of a lumbar disc (Exhibit 2F). [Rodgers] exhibited decreased breath sounds, decreased range of motion and pain in the back, and tenderness in the lumbar and cervical spine. A CT scan of [Rodgers's] chest performed on September 26, 2016, showed non-calcified pulmonary nodules bilaterally with the largest representative lesions measuring 6 mm and 5 mm, respectively; mild emphysematous changes seen diffusely throughout the lung field bilaterally; and sequela of prior granulomatous disease bilaterally. (Exhibit 5F) A visit on December 12, 2016,[5] resulted in diagnoses of emphysema; degeneration of lumbar disc; weakness; and COPD with (acute) exacerbation (Id. at 6).
>
> \* \* \*
>
> David Ours, M.D., submitted a Medical Source Statement of Ability to do Work-Related Activities (Physical) form, signed August 25, 2016 (Exhibit 1F). Dr. Ours opined that [Rodgers] could lift 20 pounds occasionally and less than 10 pounds frequently; could stand and/or walk for less than two hours in an eight-hour workday; could sit for less than six hours in an eight-hour workday; and could only

---

[5] There is no appointment from this date in the Administrative Record. The ALJ likely intended to cite Rodgers's November 28, 2016 appointment with Dr. Ours, which was printed on December 12, 2016. (AR 324.)

> occasionally reach, handle, finger, and feel. The undersigned gives no weight to Dr. Ours' opinion, as there is no objective support for the extreme limitations.

(AR 21–22.)

Rodgers argues that the ALJ's one-sentence dismissal of Dr. Ours's opinion violates the SSA's regulations governing analysis of treating-source opinions. Under the treating physician rule, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Gentry*, 741 F.3d at 727 (explaining that a treating physician's opinion concerning a claimant's RFC is also entitled to deference). If the ALJ "does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence[.]" *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). The rationale for the treating physician rule is that a treating source's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2)). "The purpose of the good reasons rule is twofold: first, 'to let claimants understand the disposition of their cases'; and second, to 'ensure[ ] that the ALJ applies the treating physician rule and permit[ ]

meaningful review of the ALJ's application of the rule.'" *Id.* (alterations in original) (quoting *Blakley*, 581 F.3d at 407). An ALJ fails to comply with this rule, which is "applied . . . broadly[,]" by "summarily discount[ing] a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Id.* at 552. An ALJ also violates the good reasons rule by failing "to provide an analysis of the factors under 20 C.F.R. § 404.1527(c)" when a treating source's opinion is not entitled to controlling weight. *Id.*

The ALJ's analysis of Dr. Ours's opinion violates the good reasons rule. As Rodgers argues, the ALJ's one-sentence conclusion that there "is no objective support for the extreme limitations" (AR 22) in Dr. Ours's opinion is too conclusive and cursory to permit meaningful judicial review. First, the ALJ's "analysis does not explain to which aspect of the controlling-weight test this critique is relevant." *Gayheart*, 710 F.3d at 377. It does not articulate whether the problem with Dr. Ours's opinion that it is not well-supported by acceptable clinical and laboratory diagnostic techniques or that it is inconsistent with the other substantial evidence in the case record. Even if this ambiguity could be resolved, the ALJ's failure to explain how Dr. Ours's opinion lacks objective support reflects the kind of summary dismissal of a treating-source opinion that the Sixth Circuit has held violates the good reasons rule. *See Hargett*, 964 F.3d at 552. Further, although the ALJ's unsupported critique of Dr. Ours's opinion arguably goes to the supportability of the opinion, there is no indication that the ALJ considered any of the other factors relevant to weighing a treating-source opinion that has been deemed non-controlling. This is an independent violation of the good reasons rule. *See id.*; *see also Gentry*, 741 F.3d at 729 ("[E]ven if the ALJ's brief statements constituted an appropriate reason not to give his opinion controlling weight, the ALJ erred by not completing the process" and considering the relevant factors).

16
Case 2:19-cv-00030 Document 23 Filed 08/14/20 Page 16 of 19 PageID #: 468

The Commissioner attempts to rescue the ALJ's opinion from these deficiencies by offering reasons that the ALJ might have found Dr. Ours's opinion unsupported. According to the Commissioner, Rodgers's treatment history with Dr. Ours was "very sporadic" and Dr. Ours's reference to "severe' emphysema" is at odds with the "subsequent chest CT in September 2016[,] [which] revealed 'mild' emphysematous changes[.]" (Doc. No. 21, PageID# 442.) But this Court has regularly rejected the Commissioner's efforts to retroactively provide good reasons for the weight accorded to a treating-source opinion. *See Kosirog v. Berryhill*, 354 F. Supp. 3d 835, 844 (M.D. Tenn. 2019) ("This Court cannot decide this case on the Commissioner's post hoc arguments."); *Johnson v. Soc. Sec. Admin.*, No. 2:16-cv-00026, 2018 WL 1508740, at *8 (M.D. Tenn. Mar. 27, 2018) (finding that the "arguments and explanations put forth by the Commissioner [did] not alter the Court's finding that the ALJ failed to comply with the treating physician rule and the good reasons rule"), *report and recommendation adopted*, 2018 WL 1948126 (M.D. Tenn. Apr. 25, 2018); *Allen v. Berryhill*, 273 F. Supp. 3d 763, 774 (M.D. Tenn. 2017) ("'It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" (citation omitted)). That is because allowing the Commissioner, on appeal, to remedy the ALJ's failure to apply the good reasons rule would undermine its dual purpose, which is to ensure that Rodgers understands the administrative disposition of his case and to facilitate meaningful appellate review of the ALJ's analysis. *Hargett*, 964 F.3d at 552 (quoting *Blakley*, 581 F.3d at 407).

Finally, the ALJ's failure to apply the good reasons rule is not harmless. The Sixth Circuit has identified the following "limited circumstances where a failure to give good reasons could constitute harmless error[:]" (1) "where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[;]'" (2) "where the Commissioner made 'findings

consistent with the [treating-source] opinion[;]'" or (3) "where the purposes of notice and ability for meaningful review have been satisfied." *Id.* at 554 (third alteration in original) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). None of those circumstances applies here. Dr. Ours's opinion "is not 'patently deficient,' because it is based on [years of] objective observation and defined criteria" and because it cites Rodgers's diagnoses and symptoms in support of its functional limitations. *Id.* at 554. Nor did the ALJ adopt findings consistent with Dr. Ours's opinion; on the contrary, the vocational expert testified that, if Dr. Ours's opinion were adopted, Rodgers would be found disabled. (AR 53.) Finally, as already discussed, the ALJ's one-sentence dismissal of Dr. Ours's opinion is too vague to permit meaningful appellate review, and therefore the purpose of the good reasons rule has not been satisfied. The Sixth Circuit has repeatedly held that remand is required where an ALJ fails to "'comprehensively set for the reasons for the weight assigned to a treating physician's opinion.'" *Hargett*, 964 F.3d at 555 (quoting *Hensley v. Astrue*, 575 F.3d 263, 267 (6th Cir. 2009)). Because that is the case here, remand is warranted.

**IV.     Recommendation**

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Rodgers's motion for judgment on the administrative record (Doc. No. 17) be GRANTED IN PART, and that this case be REMANDED for further administrative proceedings consistent with this opinion.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of August, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge